1  CHRISTOPHER MADEKSHO (SBN 281726)
   MADEKSHO LAW FIRM
2  5950 Canoga Avenue, Suite 600
   Woodland Hills, CA 91367
3  Tel: 818-963-8550
   Fax:213-386-1071
4  cmadeksho@madeksholaw.com

5  MARC A. LOWE (SBN 222360)
   LAW OFFICE OF MARC A. LOWE
6  3424 West Carson Street, Suite 350
   Torrance, CA 90503
7  Tel: 424-201-2279
   Fax: 424-201-5489
8  marc@lowelawfirm.us

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON ARMSTRONG,<br><br>           Plaintiff,<br><br>vs.<br><br>PARAMOUNT GLOBAL (formerly known as ViacomCBS Inc., CBS Corporation and Viacom, Inc.), individually and as successor-by-merger to CBS CORPORATION (formerly known as WESTINGHOUSE ELECTRIC CORPORATION); IMO INDUSTRIES LLC, individually and as successor-in-interest to IMO INDUSTRIES INC. and DELAVAL TURBINE INC.; CARRIER CORPORATION, individually and as successor-in-interest to ELLIOTT COMPANY; FS-ELLIOTT CO., LLC, individually and as successor-in-interest to ELLIOTT COMPANY and ELLIOTT TURBOMACHINERY, INC.; AURORA PUMP COMPANY; REDCO CORPORATION (formerly known as CRANE CO.); SPIRAX SARCO, INC., individually and as successor-in-interest to SARCO COMPANY; VALVES AND CONTROLS US INC., individually and as successor-in-interest to WEIR VALVES & CONTROLS USA, INC. and ATWOOD & MORRILL CO., INC.; BUFFALO PUMPS, INC., individually and as successor-in-interest to BUFFALO FORGE COMPANY; CIRCOR NAVAL | Case No.<br><br>COMPLAINT FOR PERSONAL INJURY<br><br>1. NEGLIGENCE<br>2. STRICT LIABILITY<br>3. MARITIME NEGLIGENCE<br>4. MARITIME STRICT LIABILITY<br>5. PREMISES/CONTRACTOR LIABILITY<br><br>JURY TRIAL DEMANDED |

-1-

COMPLAINT

| | |
|---|---|
| 1 | SOLUTIONS, LLC, individually and as successor-by-merger to WARREN STEAM PUMP COMPANY, INC. (formerly known as WARREN STEAM PUMP COMPANY); WARREN PUMPS LLC, individually and as successor-by-merger to WARREN STEAM PUMP COMPANY, INC. (formerly known as WARREN STEAM PUMP COMPANY); JOHN WOOD GROUP PLC, as successor-by-merger to AMEC FOSTER WHEELER PLC, successor-in-interest to FOSTER WHEELER CORPORATION; and ROES I THROUGH 100, |

Defendants.

**COMES NOW** Plaintiff VERNON ARMSTRONG, for causes of action against defendants, and each of them, complaining and alleging as follows on information and belief:

## JURISDICTION

1. The Court has jurisdiction over the matter because of diversity of citizenship between the Plaintiff and each Defendant. The amount in controversy exceeds $75,000.

## FIRST CAUSE OF ACTION

**(For Negligence Against all Defendants)**

2. Plaintiff VERNON ARMSTRONG is a natural person. He sues herein for personal injuries.

3. The true names and/or capacities of defendants, ROES 1 through 100, are unknown to Plaintff at this time. Plaintiff is informed and believes, and based thereon alleges, that each defendant designated herein as a ROE caused injuries and damages proximately thereby to plaintiffs. They are fictitiously named herein for purposes of preserving the right under substantive California law to amend the pleading to state their correct names and capacities, with relation back to the original time of pleading under

-2-

COMPLAINT

*Lindley* v. *General Electric Company* (9th Cir. 1986) 780 F.2d 797.

4. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times, defendants, and each of them, were the agents, servants, employees and/or joint venturers, successors, predecessors, parent or subsidiary corporations of their co-defendants and were, as such, acting within the scope, course and authority of said agency, employment and/or joint venture.

5. This Court is the proper venue because the place of business of a corporate defendant is in its jurisdictional area.

6. Defendants, and each of them, individually and collectively, were engaged in the manufacturing, packaging, labeling, distribution, sale, installation, and use of asbestos-containing products.

7. At all relevant times defendants, and each of them, were the successors, successor in business, successor in product line or a portion thereof, assigns, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of each of the defendant corporations identified above.

8. During his military service in the United States Navy between the years of 1961 and 1977, Plaintiff VERNON ARMSTRONG was exposed to substantial amounts of carcinogenic asbestos fibers from Defendants' asbestos-containing products. His exposure resulted in his breathing these fibers into his body.

9. That by reason of defendants' negligence as described herein, decedent VERNON ARMSTRONG developed an asbestos-caused lung cancer.

10. The injuries complained of herein were proximately caused by defendants' negligence in the following particulars: (a) each of them knew or should have known, in the exercise of reasonable care, that their asbestos-containing products were and are harmfill to the body, lungs, respiratory system, cardiovascular system, skin, and health of persons installing, handling, and using them, as well as to persons in the immediate vicinity of their installation, use and handling; (b) said asbestos products were and are capa-

ble of causing and did, in fact, cause personal injuries to users, consumers and others, while being used in a manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the decedent; (c) defendants, and each of them, failed to take reasonable care to warn the decedent of the danger and harm to which he was exposed while installing, handling and using said products, as well as while in the vicinity of the use, installation, and handling of said products.

11. The injuries complained of herein were proximately caused by the negligence of the defendants, and each of them, in the following particulars, among others: (a) each of them knew or should have known, in the exercise of reasonable care, that said asbestos products were and are harmful to the body, lungs, respiratory system, cardiovascular system, skin, and health of persons installing, handling, and using them, as well as to persons in the immediate vicinity of their installation, use and handling; (b) said asbestos products were and are capable of causing and did, in fact, cause personal injuries to users, consumers and others, while being used in a manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the decedent; (c) defendants, and each of them, failed to take reasonable care to warn the decedent of the danger and harm to which he was exposed while installing, handling and using said products, as well as while in the vicinity of the use, installation, and handling of said products; (d) each of the defendants failed to specify, recommend, supply, install, sell, and use readily available substitutes which do not and did not pose the danger to human health.

12. Plaintiff is informed and believes, and based thereon alleges, that he was exposed to substantial amounts of asbestos during the course of his employment in the Navy.

13. Plaintiff was not aware of nor was he advised of the harmful and deleterious effects asbestos products would have and did have upon his person.

14. As a direct and proximate result of the aforesaid conduct of the defendants, and each of them, Plaintiff VERNON ARMSTRONG suffered from permanent injuries to his person, body and health, causing damages to Plaintiff in a sum within the jur-

isdictional limits of this Court.

15. Asa direct and proximate result of the aforesaid conduct of the defendants, and each of them, Plaintiff VERNON ARMSTRONG was compelled to and did employ medical services, and will need to continue to do so.

16. Asa direct and proximate result of the negligence of the defendants, and each of them, the decedent did necessarily incur and in the future will incur incidental expenses and damages in an amount and amounts which have not as yet been fully ascertained. Plaintiff will assert the amount of incidental expenses and damages when the same have been ascertained or according to proof.

## SECOND CAUSE OF ACTION

**(Strict Liability in Tort Against all Defendants)**

17. Plaintiff re-alleges and incorporate by reference here, as though fully set forth at length, all of the allegations contained in the First Cause of Action set forth above.

18. At all relevant times, defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale and products containing said asbestos. The products were defective because these defendants, and each of them, failed to warn of the health hazards associated with exposure to asbestos.

19. At all relevant times, defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users and consumers thereof while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users or bystanders.

20. Defendants placed said asbestos products on the market, knowing that they would be used without inspection for such defects and unsafe conditions. Plaintiff VERNON ARMSTRONG used, handled, and was otherwise exposed to defendants' asbestos products in a manner that was reasonably foreseeable and in fact anticipated by the defendants herein. Said products were defective when they left defendants' possession.

21. Asa direct and proximate result of Plaintiff VERNON ARMSTRONG'S exposure to the asbestos products herein above described, he suffered severe and permanent injuries to his person, and he has suffered damages as alleged above.

### THIRD CAUSE OF ACTION

### (For Maritime Negligence Against all Defendants)

22. Plaintiff re-alleges and incorporate by reference here, as though fully set forth at length, all of the allegations contained in the First Cause of Action set forth above.

23. At all relevant times, defendants, and each of them, designed, manufactured, produced, sold, supplied, merchandised, marketed, distributed, and/or otherwise placed into the stream of commerce asbestos or asbestos-containing products designed for maritime use and marketed and supplied for installation aboard ships. Plaintiffs claim against these defendants, as described in this cause of action, arises under the general maritime and admiralty laws of the United States and within maritime and admiralty jurisdiction pursuant to Title 28 U.S.C. § 1333(1), Title 46 U.S.C. § 30101, and the general admiralty and maritime law of the United States. Under these laws, the courts of the State of California have jurisdiction over and are competent to adjudicate maritime causes of action in this *in personam* proceeding as long as the Court ROES not attempt to make changes in the substantive maritime law. *Madruga* v. *Superior Court of California* (1954) 346 U.S. 556, 561. Although substantive law applied in the maritime claims is federal, "admiralty cases do not fall within the scope of 28 U.S.C. § 1441, which designates as appropriate for removal only those cases 'arising under the Constitution, treaties or laws of the United States?" *Romero* v. *International Terminal Operating Co.* (1959) 358 U.S.

354, 368-369. That is, the maritime claims alleged herein do not give rise to federal question jurisdiction.

24. The asbestos-containing products described herein, which defendants designed, advertised, and sold for maritime use and used aboard ships, were products essential to the operation, navigation, function, and safety of the ship and to the continued existence, operation, and safety of the ship and its maritime activity.

25. Plaintiff's activities aboard launched vessels, and the maritime activities of others in his vicinity, as described above, caused plaintiff to inhale asbestos-containing dust, asbestos fibers, and/or particles in a manner that was reasonably foreseeable; and to have his clothes, person, and/or belongings covered with and contaminated by asbestos dust, fibers, and/or particles in a manner that was reasonably foreseeable; these asbestos fibers were released and made airborne by the intended, ordinary, and foreseeable use of defendants' asbestos-containing products.

26. Plaintiffs maritime claims against defendants as set forth in the herein Cause of Action are limited to failure to warn of the hazards of asbestos exposure.

27. As a direct and proximate result of Plaintiff VERNON ARMSTRONG'S exposure to the asbestos products herein above described, he suffered severe and permanent injuries to his person, and he has suffered damages as alleged above.

## FOURTH CAUSE OF ACTION

### (For Maritime Strict Liability Against all Defendants)

28. Plaintiff re-alleges and incorporate by reference here, as though fully set forth at length, all of the allegations contained in the First, Second, and Third of Action set forth above.

29. Exposed persons, including Plaintiff VERNON ARMSTRONG, did not know of the substantial danger of using defendants' products. The danger was not readily apparent to Plaintiff or other similarly situated persons.

30. Defendants, and each of them, failed to adequately warn Plaintiff and others similarly situated of the risks that their asbestos-containing products created.

31. Plaintiff VERNON ARMSTRONG relied on defendants' representations, lack of warnings, and implied warranties of the fitness and safety of their asbestos-containing products and was injured as a result.

32. Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in Section 402A of the Restatement (Second) of Torts, proximately caused or contributed to cause Plaintiffs asbestos cancer and injuries.

33. Plaintiffs maritime claims against defendants as set forth in the herein Cause of Action are limited to failure to warn of the hazards of asbestos exposure.

34. As a direct and proximate result of Plaintiff VERNON ARMSTRONG'S exposure to the asbestos products herein above described, he suffered severe and permanent injuries to his person, and he has suffered damages as alleged above.

## FIFTH CAUSE OF ACTION

### (Premises/Contractor Liability Against Paramount Global and ROES 80-100)

35. Plaintiff re-alleges and incorporate by reference here, as though fully set forth at length, all of the allegations contained in the First Cause of Action stated above.

36. At all relevant times, the included defendants, and each of them, respectively, maintained, managed and/or controlled the premises where Plaintiff VERNON ARMSTRONG was employed, as well as the asbestos fibers and asbestos-containing materials applied, used or located on those premises.

37. The premises include the Naval Reactors Facility (Nuclear Power Training Unit, S1W) at the Idaho National Laboratory.

38. Prior to and during the periods of Plaintiff VERNON ARMSTRONG'S employment, the included defendants, and each of them, respectively, purchased, selected, specified, approved, instructed, contracted for, and caused certain asbestos fibers and other asbestos-containing building materials, including asbestos-containing fireproofing materials, to be mixed, applied, installed, and used, by their own workers, agents, and/or various independent contractors on their premises, and thereby created a dangerous and hazardous condition and risk of harm and personal injury to

Plaintiff VERNON ARMSTRONG and other persons working on said premises, or otherwise using or coming on said premises.

39. At all relevant times, the included defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, of the composition of the asbestos-containing materials used or located on said premises, that such materials contained asbestos, and that the premises or such materials applied, used or located on the premises presented a dangerous and hazardous condition and risk of harm and personal injury to Plaintiff VERNON ARMSTRONG and similarly situated persons while working on said premises, or working with or near such materials, or otherwise using or coming on said premises. Defendants, and each of them, failed to disclose this information to Plaintiff VERNON ARMSTRONG or his employer.

40. During the period of time Plaintiff VERNON ARMSTRONG was on the premises, approximately between July 1963 and January 1964, he could not in the exercise of ordinary and reasonable care have had reason to know that the premises or such materials applied, used or located on the premises presented a dangerous and hazardous condition and risk of harm and personal injury to himself or other persons similarly situated.

41. At all relevant times, the included defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that Plaintiff VERNON ARMSTRONG was unaware of the composition of the asbestos-containing materials applied, used or located on the premises, was unaware that such materials contained asbestos, and in the exercise of ordinary and reasonable care would not know that the premises or such materials applied, used or located on the premises presented a dangerous and hazardous condition and risk of harm and personal injury to Plaintiff and other similarly situated persons while working on the premises, or working with or near such materials, or otherwise using or coming onto the premises.

42. At all relevant times, the included defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that Plaintiff VERNON ARMSTRONG'S work on their premises would expose him, or others working in

close proximity to him, to respirable asbestos fibers in dangerous quantities, thereby creating a risk of harm and personal injury to Plaintiff and other persons exposed to respirable asbestos fibers while working on the premises, or otherwise using or coming onto the premises.

43. At all relevant times, the included defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions created a dangerous and hazardous condition and unreasonable risks of harm and personal injury to Plaintiff VERNON ARMSTRONG and other workers or persons so exposed while working on or using or coming onto the premises. Defendants failed to guard, repair or remove the dangerous and hazardous condition and failed to warn Plaintiff or his employer of it, and failed to guard, repair, remove, or otherwise protect decedent him against the dangerous and hazardous condition.

44. At all relevant times, Plaintiff VERNON ARMSTRONG entered the premises and used the premises as intended for his work, and for each of the included defendants' benefit and advantage and at their request and invitation. In doing so, Plaintiff was exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by the included defendants, and each of them.

45. At all relevant times, the included defendants, and each of them, retained control over safety conditions at the premises, including during the original construction of the premises and the buildings, structures and equipment located therein, and negligently exercised that control in a manner that affirmatively caused or contributed to Plaintiff VERNON ARMSTRONG'S injuries, by creating the aforementioned dangerous and hazardous conditions, and actively directing their employees, agents and contractors to use asbestos-containing materials during the construction of the premises and by promising to institute and maintain various housekeeping, ventilation and safety measures, including the use of safety equipment, designed to reduce or eliminate the presence of toxic particles in the ambient air, and then negligently failing to do so.

46.  At all relevant times, the included defendants, and each of them, had authority to determine and select the materials to be used on the premises, as well as their placement, location and method of application, and had the authority to institute and maintain various housekeeping, ventilation and safety measures, including the use of safety equipment, designed to reduce or eliminate the presence of toxic particles in the ambient air, and then negligently failed to do so, thereby affirmatively causing or contributing to Plaintiff VERNON ARMSTRONG'S injuries.

47.  At all relevant times, Plaintiff VERNON ARMSTRONG and his employer were unaware of the risk of personal injury and hazardous conditions created by the aforesaid presence and use the asbestos-containing products on the premises.

48.  At all times mentioned herein, the included defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used as alleged without knowledge of, or inspection for, defects or dangerous conditions and that the persons working on or using the premises would not be aware of the aforesaid hazardous conditions they were being exposed to.

49.  Plaintiff is informed and believes, and thereon alleges, that exposing Plaintiff and other similarly situated persons to toxic asbestos particles would have violated instructions, given by any public entity hiring defendants, to protect the safety of persons present on the premises, including Plaintiff and other similarly situated persons.

50.  As a direct and proximate result of Plaintiff VERNON ARMSTRONG'S exposure to the asbestos described above, he suffered severe and permanent injuries to his person, and he has suffered damages as alleged above.

**PUNITIVE DAMAGE ALLEGATIONS AGAINST ALL DEFENDANTS (APPLICABLE TO ALL CAUSES OF ACTION)**

51.  Defendants, and ROES 1 through 100, and each of them, inclusive, individually and in combination, acted maliciously in marketing asbestos products which

they knew would, could and did result in the exposure of thousands of workers, including the Plaintff VERNON ARMSTRONG, to the dangerous, harmful, toxic, and deleterious effects of the asbestos contained within their products.

52. In researching, testing, manufacturing, distributing, labeling, and marketing said asbestos and asbestos products, defendants, and each of them, did so with conscious disregard for the safety of the users and individuals exposed to said asbestos and asbestos products, and as such constitute despicable conduct in that said defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including, but not limited to, lung cancer, other forms of cancer, asbestosis and other forms of lung disease and physical injury.

53. The above-referenced conduct of defendants, and each of them, was motivated by the financial interest of said defendants in the continuing, uninterrupted distribution and marketing of said asbestos and asbestos products. In pursuance of said financial motivation, said defendants consciously disregarded the safety of the users of said asbestos and asbestos products, and were in fact, consciously willing to permit said asbestos and asbestos products to cause injury to users thereof, including Plaintiff VERNON ARMSTRONG.

54. As the above-referenced conduct of said defendants, and each of them, was and is willful, malicious, outrageous, despicable and in conscious disregard and indifference to the safety of individuals exposed to said asbestos and asbestos products, including Plaintiff VERNON ARMSTRONG. Plaintiff therefore, for the sake of example and by way of punishing said defendants, seeks punitive damages, according to proof.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays judgment against defendants, and each of them, as follows:

1. For general damages in excess of the minimum jurisdictional limits, according to proof (no less than $10,000,000);

  2. For the value of reasonable and necessary medical and hospital care and attention required, which has been and will be required in the future (no less than $500,000);

  3. For punitive damages according to proof;

  4. For incidental damages according to proof;

  5. For the costs of suit incurred herein, and interest as allowed by law; and

  6. For such other and further relief as the Court deems just and proper.

MADEKSHO LAW FIRM

Dated: January __, 2025  By: _____
            Christopher Madeksho, Esq.
            Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a jury trial on all issues wherever permitted by law.

MADEKSHO LAW FIRM

Dated: January __, 2025,  By: _____
            • Christopher Madeksho, Esq.
            Attorney for Plaintiff

COMPLAINT