UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON ARMSTRONG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PARAMOUNT GLOBAL, et al.,<br><br>　　　　　Defendants. | Case No.  25-cv-00925-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 47, 48 |

　　　　This complaint for personal injury concerns Plaintiff Vernon Armstrong's alleged exposure to asbestos during his time serving in the Navy and his subsequent development of lung cancer.  Specifically, Armstrong brings claims for negligence, strict liability in tort, maritime negligence, maritime strict liability, and contractor liability against various Defendants, including Defendant Foster Wheeler LLC.  Armstrong also seeks punitive damages for Defendants' alleged willful and/or reckless failure to warn Armstrong about the dangers of their asbestos products.

　　　　Foster Wheeler now moves to dismiss or strike Armstrong's claim for punitive damages, contending that punitive damages are not available under maritime law.  For the reasons below, the motion to dismiss is **GRANTED WITH LEAVE TO AMEND**.  This ruling assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

　　　　***Whether Maritime Law Applies.***  The threshold question here is whether Armstrong's claims must be judged under common law or maritime law.  "[A] party seeking to invoke federal maritime jurisdiction over a tort claim must satisfy both a location test and a connection test."

1

*Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978, 982 (9th Cir. 2007). Both prongs of the test are met here, and therefore application of maritime law is appropriate. Under the location test, the tort must have "occurred on navigable water" or been caused by a "vessel on navigable water." *Id.* Exposure to asbestos as a result of work on ships is "sufficient to satisfy the location test so long as the exposure occurred on a vessel on navigable waters." *Shelton v. Air & Liquid Sys. Corp.*, No. 4:21-CV-04772-YGR, 2022 WL 2712379, at *1 (N.D. Cal. June 21, 2022) (citing *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1121 (9th Cir. 1984)). In particular, numerous district courts have found the test satisfied "as long as some *portion* of the asbestos exposure occurred on a vessel on navigable waters." *See, e.g.*, *Wineland v. Air & Liquid Sys. Corp.*, 523 F. Supp. 3d 1245, 1250–51 (W.D. Wash. 2021) (quotations omitted) (emphasis added); *In re Toy Asbestos*, No. 19-CV-00325-HSG, 2021 WL 1930992, at *3 (N.D. Cal. May 13, 2021); *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1187 (D. Haw. 2013); *Rockwell v. Air & Liquid Sys. Corp.*, No. CV 21-3963-GW-PLAX, 2022 WL 18228256, at *3 (C.D. Cal. Sept. 1, 2022).

Although the Ninth Circuit has not squarely addressed this question, the Court is persuaded by the reasoning in *Wineland*. In *Wineland*, the district court concluded that the location test only requires a portion of exposure to have occurred on navigable waters "because asbestos-related disease has a long latency period" and therefore "intermittent episodes of land-based exposure do not affect the analysis." 523 F. Supp. 3d at 1250–51. That is particularly so because plaintiffs in asbestos cases will commonly "rely on expert testimony that all non-trivial exposures to asbestos contribute to the disease process." *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011). Moreover, the exact locations and durations of a plaintiff's asbestos exposure are often unknown at the pleadings stage, if they are known at all. As such, a test more exacting than the "portion of exposure" standard would introduce needless uncertainty and complexity to the gateway question of whether federal maritime jurisdiction applies. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Complex jurisdictional tests complicate a case, eating up time and money[.]").

Here, Armstrong alleges that he was exposed to asbestos due to his activities "aboard

launched vessels" and the "maritime activities of others in his vicinity." (Dkt. No. 1 (Compl.) ¶ 25.) Nonetheless, Armstrong argues that his claim does not satisfy the location test because his allegations "are not limited to exposure aboard floating vessels" or exposures that "necessarily occurred on Navy vessels." (Dkt. No. 73 at 2.) However, as discussed above, the location test only requires that a *portion* of the exposure occurred while the vessel was on navigable waters, and Armstrong has already stated that he was exposed to asbestos while on launched vessels.[1] *Wineland*, 523 F. Supp. 3d at 1250–51; *In re Toy Asbestos*, 2021 WL 1930992, at *3. And unlike in *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 468 (E.D. Penn. 2011), there are no allegations that Armstrong was a predominantly land-based worker. Accordingly, the allegations plausibly support a finding that the location test is satisfied.

The connection test considers whether (i) the incident has a "potentially disruptive impact on maritime commerce" and (ii) the "general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009). The Ninth Circuit has "taken an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce." *Id.* at 1128. Courts routinely find the connection test satisfied in naval asbestos exposure cases. *Wineland*, 523 F. Supp. 3d at 1251 (collecting cases). "The exposure to unsafe products [such as those containing asbestos] and resulting injuries could have the potential to disrupt further repairs of th[e] vessel, vessels being worked on at the same dock, or vessels waiting to be worked upon." *Shelton*, 2022 WL 2712379, at *2 (quotations omitted). Asbestos products are "necessary to the proper functioning and maintenance of ships" and therefore have a "substantial relationship to traditional maritime activity." *Id.* at *3.

Armstrong alleges he was exposed to asbestos in the "installing, handling, and using" of

---

[1] Nor does it matter that Armstrong did not waive claims arising from exposure to Foster Wheeler products at a land-based work site, for the same reasons. The only factual allegation involving land-based premises liability is exposure at the Idaho National Laboratory. (Compl. ¶ 37.) The Court does not analyze the premises liability claim because it does not involve Foster Wheeler.

products that were "designed for maritime use and marketed and supplied for installation aboard ships." (Compl. ¶ 11, ¶ 23.) He further describes these products as being "essential to the operation, navigation, function and safety of the ship . . . and its maritime activity." (Compl. ¶ 24.) Accordingly, the connection test is plausibly alleged here.

*Whether Punitive Damages are Available.* Armstrong has not shown that punitive damages are available under maritime law for negligence or strict liability claims. The Supreme Court laid out a framework for determining which types of damages plaintiffs can seek under general maritime law: (1) whether the relief sought have "long been available" in general maritime actions, and (2) whether any statute precludes that relief from being awarded. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 415 (2009). Later, a third prong was added concerning whether courts are nevertheless "compelled on policy grounds" to award requested damages. *The Dutra Grp. v. Batterton*, 588 U.S. 358, 369 (2019).

Armstrong claims that punitive damages are historically recoverable under maritime law for common law causes of action. But Armstrong does not cite any cases in which punitive damages were available for the specific types of claims he is asserting, namely, negligence and strict liability. He primarily relies on *Townsend*, which held that punitive damages are available for "maintenance and cure" claims. 557 U.S. at 407 (2009). However, as *Townsend* acknowledged, remedies for negligence and strict liability have a different origin than maintenance and cure and may "call for application of slightly different principles and procedures." *Id.* at 423. "Without historical evidence that punitive damages are traditionally recoverable for negligence and strict liability claims," *Smargisso v. Air & Liquid Sys. Corp.*, 750 F. Supp. 3d 1046, 1066 (N.D. Cal. 2024), the Court must apply a uniform rule applicable to all actions for the same injury, whether under the Jones Act or a general maritime law. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990). And because the Jones Act does not permit recovery of non-pecuniary damages, punitive damages are not available to Armstrong under maritime law. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1347 (9th Cir. 1987), *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989) ("Punitive damages are non-pecuniary damages

unavailable under the Jones Act."); *see also Smargisso*, 750 F. Supp. 3d at 1066; *Spurlin v. Air & Liquid Sys. Corp.*, 537 F. Supp. 3d 1162, 1181 (S.D. Cal. 2021).

Accordingly, Foster Wheeler's Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND**.  Specifically, Armstrong may amend his claims against Foster Wheeler to reassert punitive damages if he could allege that his exposure to their products occurred in a land-based setting, and that his current allegations regarding his exposure aboard launched vessels pertain only to the other Defendants.  If Armstrong wishes to so amend, he shall file a first amended complaint no later than **August 11, 2025**.  If Armstrong does not file an amended complaint by that date, the case will proceed on the original complaint.

**IT IS SO ORDERED.**

Dated: July 28, 2025

RITA F. LIN
United States District Judge